UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**WERNER FLIER, TIMOTHY GILFUS,
MICHAEL GILFUS, DANIEL GILFUS,
LISA GILFUS, EDWARD HASKIN AND
JENNIFER SWAN,**

                    Plaintiffs,

          v.                                                              5:03-CV-578 (HGM/DEP)

**CAYUGA COUNTY, CAYUGA COUNTY
DISTRICT ATTORNEY'S OFFICE,
ATTORNEY VARGASON, ATTORNEY ADSIT,
CAYUGA COUNTY SHERIFF'S DEPARTMENT,
SHERIFFS OUTHOUSE, BENTON AND LUPO,
THOMAS ADESSA, JOHN AND JANE DOES,**

                    Defendants.
_____

**APPEARANCES:**                                        **OF COUNSEL:**

WERNER FLIER
Plaintiff *pro se*
P.O. Box 319
54 Maple Avenue
Port Byron, NY 13140

TIMMOTHY GILFUS
Plaintiff *pro se*
Post Office Box 319
54 Maple Avenue
Port Byron, NY 13140

MICHAEL GILFUS
Plaintiff *pro se*
Post Office Box 319
54 Maple Avenue
Port Byron, NY 13140

DANIEL GILFUS
Plaintiff *pro se*
Post Office Box 319
54 Maple Avenue
Port Byron, NY 13140

LISA GILFUS
Plaintiff *pro se*
Post Office Box 319
54 Maple Avenue
Port Byron, NY 13140

EDWARD HASKIN
Plaintiff *pro se*
Post Office Box 319
54 Maple Avenue
Port Byron, NY 13140

JENNIFER SWAN
Plaintiff *pro se*
Post Office Box 319
54 Maple Avenue
Port Byron, NY 13140

GOLDBERG, SEGALLA, LLP                          KENNETH M. ALWEIS, ESQ.
Attorneys for Defendants/Cross Defendants
the County of Cayuga, The District Attorney of
Cayuga County, The Sheriff of Cayuga County,
and Sheriff's Department, Sheriff Lupo,
and Sheriff Outhouse
5789 Widewaters Parkway
Syracuse, New York 13214

GOLDBERG, SEGALLA, LLP                          PATRICK B. NAYLON, ESQ.
Attorneys for Defendant/Cross Defendant Diane Adsit
Two State Street
Suite 805
Rochester, NY 14614

CRAMER, SMITH & LEACH, P.C.                      DAVID E. LEACH
Attorneys fo Defendant/Cross-Defendant Vargason
892 East Brighton Avenue
Syracuse, NY 13205

DIANE M. MARTIN-GRANDE, ESQ.
Attorney for Defendant/Cross Defendant Benton
301 Black River Boulevard
Rome, NY 13440

SUGARMAN LAW FIRM                               PAUL V. MULLIN, ESQ.
Attorneys for Defendant/Cross Claimant Thomas Adessa

360 South Warren Street
HSBC Center
Syracuse, NY 13202

**HOWARD G. MUNSON**
**Senior United States District Judge**

### MEMORANDUM - DECISION AND ORDER

### INTRODUCTION

On May 9, 2003, Werner Flier, Timothy Gilfus, Michael Gilfus, Daniel Gilfus, Lisa Gilfus,

Edward Haskin and Jennifer Swan ("Plaintiffs"),[1] filed summonses and a complaint against

Defendants[2] the County of Cayuga, New York;  James B. Vargason, District Attorney of Cayuga

County; Diane Adsit, Assistant District Attorney of Cayuga County; Rob Outhouse, Sheriff of

Cayuga County; Cayuga County Deputy Sheriffs Benton and Lupo; Thomas Adessa; and John and

Jane Does ("Defendants") for claims pursuant to the Racketeer Influenced and Corrupt Organizations

Act, 18 U.S.C. § 1962 ("RICO"), 42 U.S.C. § 1983, the Fourth, Fifth, and Fourteenth Amendments

to the United States Constitution, and various New York state law causes of action.  On January 26,

2004, Defendants filed a motion seeking an Order pursuant to Rules 12(c), (f), and (h)(1) and (2) of

the Federal Rules of Civil Procedure entering judgment on the pleadings in their favor.  Dkt. No. 14,

Notice of Mot.  For the reasons that follow below, the Court GRANTS Defendants' motion and

dismisses Plaintiffs' Complaint.

---

[1]Although the Court above lists Plaintiffs as *pro se* litigants consistent with United States Magistrate Judge David E. Peebles' Order granting the application of Bjorn J. Holubar, Esq. to withdraw as Plaintiffs' counsel effective December 20, 2004, *see* Dkt. No. 41, Order, at the time of the filing of Plaintiffs' Complaint and their opposition to the instant motion as brought by Defendants, they were represented by counsel.  *See* Dkt. No. 1, Compl.; Dkt. No. 28, Mem. of Law; and Dkt. No. 34, Tr.  Therefore, the Court need not apply the standards set forth in <u>Haines v. Kerner</u>, 404 U.S. 519, 520, 30 L.Ed.2d 652, 92 S.Ct. 594 (1972), for Plaintiffs' benefit as to the instant motion.

[2]Whereas Plaintiffs did not properly designate Defendants in their Complaint, the Court will properly reference Defendants, thus accounting for any divergence between Defendants as captioned and Defendants as referenced in the body of this opinion.

# BACKGROUND

Plaintiffs' Complaint alleges, rather inartfully,[3] that on the morning of December 1, 2001,

Cayuga County law enforcement officials, supervised by Cayuga County Assistant District Attorney

---

[3] Plaintiffs' Complaint is so riddled with grammatical and point-of-view mistakes as to render it nonsensical, if not unreadable. Moreover, Plaintiffs' Complaint fails to paint a clear picture of the "raid" underlying Plaintiffs' claims. Paragraphs 45-57 illustrate the defects typical of Plaintiffs' Complaint:

45. On the morning of December 1st, 2001, Lisa Gilfus, was awakened by a knock [sic] *my* apartment door. She got up and answered it and when she did there was a lady and young boy standing there.

46. Immediately the lady asked for a girl named Tracey. Lisa Gilfus told her there is no one her [sic] by that name and then suddenly they both ran off *my* porch.

47. After closing *my* door Lisa then went to lay down and upon doing so the phone rang. Lisa picked the receiver & immediately *my* mom tell [sic] *me* to get everyone up because an [sic] warrant has been issued against the Gilfus farm.

48. So while Lisa continued to talk to her mother[,] she looked out *my* kitchen window and into the faces of two female ASPCA officers.

49. Lisa was shocked especially seeing that they had their guns draw [sic] & that

50. they were point [sic] their guns at *my* house.

51. Immediately upon seeing Lisa through the windows these female ASPCA officers yelled for her to out [sic] with *my* hand up. While comply [sic] with their orders she yelled for *my* boyfriend, Ed Haskins, to get up.

52. Lisa then walked outside in *my* underwear, bra and immediately the female SPCA officers searched *my* entire body including putting *their* [sic] up *my* bra and down into *my* underwear.

53. While being search[,] [sic] Lisa's daughter, Amanda, stuck her head out of the screen door to see what was going on & immediately the other ASPCA officer pointed her gun at her.

54. Immediately Lisa yelled [sic] went to her. After going to *my* daughter[,] she was then put back up against the wall & told not to move.

54a. At this point the other ASPCA female walks into Lisa's apartment and bring [sic] herself and *my* boyfriend outside in his underwear. Immediately he, too, is searched from head to toe.

55. While this is occurring[,] Lisa asked Sgt. Lupo if she could grab *my* coat & he told *me* I didn't need it. Lisa then told him she was cold[,] but he didn't respond to *me*.

56. By this time[,] Lisa's daughter, Amanda, is in hysterics, she is crying, etc..

57. She then goes back inside *our* apartment.

Dkt. No. 1, Compl. at ¶¶ 45-57 (emphases added).

Diane Adsit, raided the Gilfus family farm in Cayuga County and removed certain horses, ponies and other animals therefrom. The raid resulted in prosecutions for failure to provide proper sustenance, *see* N.Y. AGRIC. & MKTS. LAW § 353 (McKinney), and convictions which were appealed to the Fourth Department. *See* <u>People v. Gilfus</u>, 4 A.D.3d 788, 772 N.Y.S.2d 164 (4th Dept. 2004) (Patricia Gilfus); <u>People v. Gilfus</u>, 4 A.D.3d 789, 771 N.Y.S.2d 452 (4th Dept. 2004) (Richard Gilfus); <u>People v. Gilfus</u>, 4 A.D.3d 789, 771 N.Y.S.2d 452 (4th Dept. 2004) (John Gilfus). Plaintiffs assert thirteen, often redundant,[4] causes of action. For their First Cause of Action, Plaintiffs allege that Defendants failed to protect Plaintiffs from unconstitutional harm in violation of rights secured by 42 U.S.C. § 1983 and the Fourth, Fifth and Fourteenth Amendments. Dkt. No. 1, Compl. at ¶¶ 114-17. Respecting their Second Cause of Action, Plaintiffs Flier, Daniel Gilfus, Michael Gilfus, and Swan allege that Defendants denied them due process subjected them to unconstitutional takings in violation of the Fourth Amendment. <u>Id.</u> at ¶¶121-24. In their Third Cause of Action, Plaintiffs allege that Defendants subjected them to illegal searches and seizures in violation of the Fourth Amendement. <u>Id.</u> at ¶¶ 128-131. Vying to vindicate their allegedly deprived constitutional rights, in their Fourth Cause of Action, Plaintiffs Flier, Daniel Gilfus, Michael Gilfus and Swan allege that Defendants denied them due process and subjected them to unconstitutional takings in violation of the Fifth Amendment. <u>Id.</u> at ¶¶ 135-38. Occupying their Fifth Cause of Action, Plaintiffs allege that Defendants subjected them to illegal searches, seizures, and detainment in violation of the Fifth Amendment. <u>Id.</u> at ¶¶ 142-45. Lying as their Sixth Cause of Action, Plaintiffs allege that Defendants denied them their due process rights and subjected them to unconstitutional takings in violation of the Fourteenth Amendment. <u>Id.</u> at ¶¶ 149-52. Offended by Defendants' conduct, in their Seventh Cause of Action, Plaintiffs allege that Defendants subjected them to illegal searches,

---

[4]*Compare* Dkt. No. 1, Compl. ¶¶ 135-141 *with* ¶¶ 142-48.

seizures and detainment in violation of the Fourteenth Amendment. Id. at ¶¶ 156-59. Under their Eighth Cause of Action, Plaintiffs assert a *Monell*[5]-type claim against alleging that Defendants (1) failed to properly supervise and/or discipline their law enforcement officers as to the use of excessive force and (2) negligently hired and trained their law enforcement officers. Id. at ¶¶ 163-68. Standing alone in the Ninth Cause of Action,[6] Timothy Gilfus alleges that Defendants falsely imprisoned him. Id. at ¶¶ 174-75. Couched as their Tenth Cause of Action, Plaintiffs allege that Defendants negligently hired, screened, retained, supervised and trained the individual defendant law enforcement officers. Dkt. No. 1, Compl. at ¶ 181. As for their Eleventh Cause of Action, Plaintiffs apparently assert that Cayuga County is liable to them under the doctrine of *respondeat superior* for the actions of its law enforcement officers and prosecutors. Id. at ¶ 185. Signifying their Twelfth Cause of Action, Plaintiffs allege that Adessa perjured himself, provided a false affidavit and committed fraud against the courts of the State of New York. Id. at ¶¶ 190-91. Ending with their Thirteenth Cause of Action, Plaintiffs claim Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*. Plaintiffs allege that after the raid, Defendants devised and then engaged in a "fraudulent scheme to cover-up their wrongful conduct" by "filing false police reports," "committing perjury before [the] Grand Jury" and committing mail and wire fraud. Id. at ¶¶ 196-97. Plaintiffs seek compensatory damages in totaling $6,835,000 as well as punitive damages and costs and attorneys' fees.

## DISCUSSION

### I.      Plaintiff's Failure to Comply with Local Rules 7.1(b)(1) and (3)

---

[5]Monell v. New York City Dep't. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

[6]In a fit of non-sequential and duplicative numbering, Plaintiffs mislabel their Ninth through Thirteenth Causes of Action as their Sixth through Ninth Causes of Action. For clarity's sake, the Court will refer to these causes of action as if Plaintiffs had properly numbered them.

Defendants filed their motion for judgment on the pleadings, supporting affidavits and memorandum of law on January 26, 2004, and selected a return date of March 12, 2004. The Court subsequently moved the return date to June 11, 2004. Local Rule 7.1(b)(1) requires any opposing papers to be filed with the court and served on the moving party "not less than SEVENTEEN DAYS prior to the return date of the motion." L.R. 7.1(b)(1). Accordingly, Plaintiffs were to file any opposing papers by no later than May 26, 2004. Plaintiffs, however, delayed filing their memorandum of law and affidavit in opposition until October 4, 2004, and October 5, 2004, respectively. Local Rule 7.1(b)(3) states in pertinent part that

> [a]ny papers required under this Rule that are not timely filed or are otherwise not in compliance with this Rule shall not be considered unless good cause is shown. Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.

L.R. 7.1(b)(3). Plaintiffs have made no effort to demonstrate good cause as to why they failed to timely file their opposition papers.

The Local Rules are not empty formalities. Local Rules, such as Rule 7.1(b)(3), "serve to notify the parties of the factual support for their opponent's arguments, but more importantly inform the court of the evidence and arguments in an organized way–thus facilitating its judgment of the necessity for a trial." Little v. Cox's Supermarkets, 71 F.3d 637, 641 (7th Cir. 1995). Each of these functions is critical. A party's failure to comply with these rules is fundamentally unfair to the opposing party. The opposing party has a right to be informed of the factual bases of his rival's case and the specific foundations for those contentions of fact. Non-compliant conduct is also adverse to the conservation of judicial resources which are most efficiently used when the parties meet their adversarial duties in a tightly orchestrated and lucid manner. See Meaney v. CHS Acquisition Corp.,

103 F.Supp.2d 104, 107 (N.D.N.Y. 2000); <u>Niles v. New York Office of Mental Retardation and Development Disability</u>, 1996 WL 743839, at *6 (N.D.N.Y. Dec 20, 1996).

Having found no good cause to excuse Plaintiffs' dilatory practice, arguably, the Court may grant Defendants' motion for judgment on the pleadings because of Plaintiffs' failure to timely file their opposition papers. *See* L.R. 7.1(b)(3); <u>Allen v. Comprehensive Analytical Group, Inc.</u>, 140 F.Supp.2d 229, 231 (N.D.N.Y. 2001). Nevertheless, the Court here examines the merits of Defendants' motion.

## II.    Judgment on the Pleadings

The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) for a motion for failure to state a claim. <u>Patel v. Contemporary Classics of Beverly Hills</u>, 259 F.3d 123, 126 (2d Cir. 2001) (citing <u>Irish Lesbian & Gay Org. v. Giuliani</u>, 143 F.3d 638, 644 (2d Cir. 1998). A dismissal pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted is warranted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957) (footnote omitted); *see also* <u>Irish Lesbian and Gay Org.</u>, 143 F.3d at 644 (2d Cir. 1998) (citing <u>Sheppard v. Beerman</u>, 18 F.3d 147, 150 (2d Cir. 1994)). "The task of the court in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" <u>Cooper v. Parsky</u>, 140 F.3d 433, 440 (2d Cir. 1998) (quoting <u>Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.</u>, 748 F.2d 774, 779 (2d Cir. 1984)). While a court need not accept mere conclusions of law, in assessing plaintiff's complaint, "the court must presume that the allegations in the complaint, and all reasonable inferences that can be drawn from them, are true." <u>Woodford v. Cmty. Action Agency of Greene County, Inc.</u>, 239 F.3d 517, 526 (2d

Cir. 2001) (citing <u>Lee v. Bankers Trust Co.</u>, 166 F.3d 540, 543 (2d Cir. 1999)).  Furthermore, when

a party makes a Rule 12(b)(6) motion, a court will limit its consideration "'to facts stated on the face

of the complaint, in documents appended to the complaint or incorporated in the complaint by

reference, and to matters of which judicial notice may be taken.'"  <u>Leonard F. v. Israel Disc. Bank</u>

<u>of N.Y.</u>, 199 F.3d 99, 107 (2d Cir. 1999) (quoting <u>Allen v. West Point-Pepperell, Inc.</u>, 945 F.2d 40,

44 (2d Cir.1991)).

## III.   Defendants' Motion

Defendants mount a multi-pronged defense to Plaintiffs' Complaint.  In their motion to

dismiss, Defendants contend that the Court lacks jurisdiction over Vargason, Adsit, Outhouse, and

Cayuga County because Plaintiffs failed to properly effect service upon them.  Defendants argue that

Plaintiffs' claims under New York law are barred by the statute of limitations.  The individual

Defendants argue that they are entitled to immunity in their personal capacity under 42 U.S.C. §

1983.  Defendants assert that Plaintiffs failed to state a cause of action under RICO.  Defendants also

argue that Plaintiffs are not entitled to punitive damages against municipal entities.

### A.    The Court Lacks Jurisdiction due to Improper Service of Process

#### 1.    Defendants Vargason, Adsit, and Outhouse

Rule 4(e) of the Federal Rules of Civil Procedure provides that service upon an individual

may be effected: "pursuant to the law of the state in which the district court is located," FED.R.CIV.P.

4(e), in this case New York.  Section 308(2) of the New York Civil Practice Law and Rules provides

in pertinent part that:

> by delivering the summons within the state to a person of suitable age and discretion
> at the actual place of business, dwelling place or usual place of abode of the person
> to be served and by either mailing the summons to the person to be served at his or
> her last known residence or by mailing the summons by first class mail to the person
> to be served at his or her actual place of business in an envelope bearing the legend
> "personal and confidential" and not indicating on the outside thereof, by return

> address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such delivery and mailing to be effected within twenty days of each other proof of such service shall be filed with the clerk of the court designated in the summons within twenty days of either such delivery or mailing, whichever is effected later; service shall be complete ten days after such filing . . .

N.Y. C.P.L.R. § 308(2) (McKinney).  Additionally, Rule 4(m) of the Federal Rules of Civil Procedure requires service of the summons and complaint within 120 days following filing of the complaint unless the court upon good cause shown extends the time for such service.  FED.R.CIV.P. 4(m).

Defendants assert that the additional mailing was not made to Defendants Vargason and Adsit at their actual place of business as required by Section 308(2) of the New York Civil Practice Law and Rules.  In addition, Defendants assert that the envelope containing the Summons and Complaint did not bear the legend "personal and confidential" as required by Section 308(2) of the New York Civil Practice Law and Rules for summonses mailed to an actual place of business.  As to Sheriff Outhouse, Defendants assert that Plaintiffs failed to complete the second mailing as required by Section 308(2) of the New York Civil Practice Law and Rules.  More than 120 days have elapsed since the filing of the Complaint and Plaintiffs have not completed service.  Despite their burden of proving proper service, *see* Comind Participacoes, S.A. v. Terry, 1992 WL 84567, at *1 (S.D.N.Y. Apr. 14, 1992), Plaintiffs barely contested[7] Defendants' assertions and pursuant to Rule 4(m) of the Federal Rules of Civil Procedure dismissal is appropriate as to Defendants Vargason, Adsit and Outhouse.

> 2.    County of Cayuga

Similarly, Plaintiffs have never served the County of Cayuga with the Summons and

---

[7]In the conclusion to their memorandum of law, Plaintiffs baldly assert that "service of defendants . . . [was] properly effected."  Dkt. No. 28, Mem. of Law at 9.

Complaint.  Rule 4(j)(2) of the Federal Rules of Civil Procedure provides that "[s]ervice upon a state, municipal corporation, or other governmental organization subject to suit shall be effected by delivering a copy of the summons and of the complaint to its chief executive officer or by serving the summons and complaint in the manner prescribed by the law of that state for the service of summons or other like process upon any such defendant."  FED.R.CIV.P. 4(j)(2).  Section 311(4) of the New York Civil Practice Law and Rules provides that "[p]ersonal service . . . [upon a county] shall be made by delivering the summons . . . to the chair or clerk of the board of supervisors, clerk, attorney or treasurer . . . ."  N.Y. C.P.L.R. § 311(a)(4) (McKinney).  Defendants assert that the County of Cayuga has never been served with Plaintiffs' Summons and Complaint.  Again, Plaintiffs have not contested Defendants' assertions and thus, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, dismissal is appropriate as to the County of Cayuga.

      *B.*    *Statute of Limitations*

    Defendants assert that Plaintiffs' action is barred by the applicable statute of limitations.  An action against a Sheriff in his official capacity must be brought within one year.  Section 215(1) of the New York Civil Practice Law and Rules provides a one-year limitations period for "an action against a sheriff . . . upon a liability incurred by him by doing an action in his official capacity or by omission of an official duty . . . ."  N.Y. C.P.L.R. § 215(1) (McKinney).  "'The one-year limitation governing actions against a sheriff . . . applies equally to his deputies.'"  Houghton v. Cardone, 295 F.Supp.2d 268, 280 (W.D.N.Y. 2003) (quoting Kingston v. Erie County, 122 A.D.2d 543, 544, 505 N.Y.S.2d 9 (4th Dep't 1986)).  In addition, an action to recover for false imprisonment must be brought within one year of the arrest.  N.Y. C.P.L.R. § 215(3).

    Plaintiffs counter that the statute of limitations does not bar their claims because Section 50-h(5) of the New York General Municipal Law precluded them from filing their action.  Section 50-

h(1) provides in pertinent part that "[w]herever a notice of claim is filed against a . . . county . . . , the . . . county . . . shall have the right to demand an examination of the claimant relative to the occurrence and extent of the injuries or damages for which claim is made." N.Y. GEN. MUN. LAW § 50-h(1). Plaintiffs assert that Defendants served them with a Demand for Examination in accord with Section 50-h(1) and (2) of the New York General Municipal Law. Plaintiffs claim that "Defendants' depositions of Plaintiffs were consistently rescheduled for a period of six months following Plaintiffs Notice of Claim," Dkt. No. 28, Pls.' Mem. of Law at 2, and that Section 50-h(5) precluded them from filing their action any sooner. Plaintiffs' argument fails.

Section 50-h(5) provides:

> Where a demand for examination has been served as provided in subdivision two of this section no action shall be commenced against the city, county, town, village, fire district or school district against which the claim is made unless the claimant has duly complied with such demand for examination, which compliance shall be in addition to the requirements of section fifty-e of this chapter. *If such examination is not conducted within ninety days of service of the demand, the claimant may commence the action.* The action, however, may not be commenced until compliance with the demand for examination if the claimant fails to appear at the hearing or requests an adjournment or postponement beyond the ninety day period. If the claimant requests an adjournment or postponement beyond the ninety day period, the city, county, town, village, fire district or school district shall reschedule the hearing for the earliest possible date available.

N.Y. GEN. MUN. LAW § 50-h(5) (emphasis added). Therefore, if Defendants were responsible for any delay in the examination in excess of ninety days of their service of the demand, then Plaintiffs could have commenced their action. If Plaintiffs caused the delay, then it strains credulity that they would assert such delay should toll the statute of limitations.

The last date in the Complaint in which Plaintiffs allege that Sheriff Outhouse and Deputy Sheriffs Benton and Lupo were involved in the action was December 1, 2001. Plaintiffs filed their Complaint on May 9, 2003, well more than a year after Sheriff Outhouse's and his deputies' alleged involvement. Accordingly, Sheriff Outhouse and Deputy Sheriffs Benton and Lupo are entitled to

judgment on the pleadings with respect to Plaintiffs' Sixth, Ninth, Tenth, Eleventh and Twelfth

Causes of Action.  *See* N.Y. C.P.L.R. §§ 215(1) and (3).

        C.      *The Individual Defendants are Entitled to Immunity in their Personal Capacity Under § 1983 and Monell*

      In their complaint, Plaintiffs allege a violation of rights secured by 42 U.S.C. § 1983.  Section

1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  In their Complaint, Plaintiffs named Defendants Vargason, Adsit, Outhouse,

Benton, and Lupo in both their official and individual capacities.  The Supreme Court, however, has

made clear that public officials, such as the above-named Defendant, may not be sued in their official

capacity.  Hafer v. Melo, 502 U.S. 21, 22, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *see also* Ying Jing

Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is

sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the

official is entitled to invoke the Eleventh Amendment immunity belonging to the state.") (citation

omitted).  The Supreme Court reasoned that a suit against an officer in his or her official capacity

was the equivalent of suing the office or the State.  Neither an office nor a state can be classified as

a "person" as that term is used in 42 U.S.C. § 1983.  Hafer, 502 U.S. at 26, 112 S.Ct. at 362.

Although the Eleventh Amendment does not bar suits against state officials sued in their individual

capacities, it is clear that Plaintiffs cannot seek relief under 42 U.S.C. § 1983 against these individual

Defendants in their respective official capacities.  Id. at 31, 112 S.Ct. at 364-65.

        D.      *Plaintiffs Have Failed to State a Cause of Action Under RICO*

Section 1964(c) of the RICO statute creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964. Because "[c]ivil RICO is an unusually potent weapon . . . courts should strive to flush out frivolous RICO allegations at an early stage in the litigation." Katzman v. Victoria's Secret, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (citations omitted). Defendants challenge Plaintiffs' standing to assert their RICO claims and the sufficiency of Plaintiffs' substantive allegations.

　　　　1.　　　Standing

To establish a RICO claim, a plaintiff must plead: "(1) the defendant's violation of § 1962; (2) an injury to the plaintiff's business or property; and (3) causation of the injury by the defendant's violation." Lerner v. Fleet Bank, N.A., 318 F.3d 113, 120-24 (2d Cir. 2003) (citing Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc., 271 F.3d 374, 380 (2d Cir. 2001)).[8] Defendants do not challenge Plaintiffs' allegations with regard to the first two elements but submit that Plaintiffs have failed to satisfy causation with respect to their mail and wire fraud allegations which they cite as predicate acts to their RICO claim.

---

[8]Plaintiffs apparently suggest that they satisfied the zone-of-interest test. In Lerner, however, the Second Circuit expressed its preference for the approach adopted by the Supreme Court majority in Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) and its own approach in Powers v. British Vita, P.L.C., 57 F.3d 176, 188 (2d Cir. 1995):

　　　Although we are troubled by the issues potentially raised by the application of the zone-of-interests test to determine standing in the RICO context, we need not delve deeply into the implications in the present case. We believe the better approach is that adopted by the Supreme Court in Holmes and this Court in Powers: if the standing issue may be resolved on proximate cause grounds, the question whether the plaintiff must also satisfy the standing requirements of the underlying statutes whose violations constitute predicate acts . . . or the underlying regulatory system allegedly corrupted . . . need not be reached. As plaintiffs cannot show that defendants' alleged violations of § 1962 proximately caused their injuries, they lack standing to pursue their RICO claims.

Lerner, 318 F.3d at 121-22 (footnotes omitted). In an accompanying footnote, the Second Circuit "encourage[d] district courts to follow this approach in future opinions addressing RICO standing issues." Id. at 122 n.7; see also Baisch 346 F.3d at 373 (explaining that the Second Circuit's "proximate cause analysis adequately incorporates the zone-of-interests test's concerns in most cases" and "clarify[ing] that it is inappropriate to apply a zone-of-interests test independent of this circuit's proximate cause analysis.").

The third element is satisfied if "the defendant's injurious conduct is both the factual and the proximate cause of the injury alleged." Baisch v. Gallina, 346 F.3d 366, 372 (2d Cir. 2003) (citing Lerner, 318 F.3d at 120). The Second Circuit applies a two-prong test to determine the existence of proximate cause. First, the plaintiff's injury must result from the defendants' racketeering activity or commission of the RICO predicate acts. *See* Baisch, 346 F.3d at 373. "[A] plaintiff does not have standing [under RICO] if he suffered an injury that was indirectly (and hence not proximately) caused by the racketeering activity." Id. Second, the Court must determine "whether the defendants' acts were 'a substantial factor in the sequence of responsible causation,' and whether the plaintiff's injury was 'reasonably foreseeable or anticipated as a natural consequence.'" Baisch, 346 F.3d at 373-74 (quoting Lerner, 318 F.3d at 123). The Second Circuit has explained that in the context of an alleged RICO predicate act of mail fraud, the plaintiff must "demonstrate that the defendant's misrepresentations were relied on" to establish the required causal connection. Metromedia Co. v. Fugazy, 983 F.2d 350, 368 (2d Cir. 1992) (citing County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1311 (2d Cir. 1990)).

Paragraph 197, Subparagraphs (d) and (e) of Plaintiffs' Complaint discussed the alleged mail and wire fraud. Plaintiffs, however, fail to allege any reliance upon any misrepresentations sent by Defendants through either the mails or wires. Plaintiffs merely state that Defendants used the mails and wires for the purpose of covering up their wrongful conduct. Plaintiffs failed to allege that Defendants even communicated with them through the mails or by the wires. As the Second Circuit has made clear, such allegations are insufficient to demonstrate causation of Plaintiffs' injuries for purposes of civil RICO.

        2.        Failure to Plead Alleged Predicate Acts With Sufficient Particularity–Rule 9(b)

Under Rule 9(b),[9] "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993) (citation omitted); *see also* Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989) (Under Rule 9(b)'s higher pleading standard, the "complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.").[10] In addition to the alleged mail and wire fraud, Plaintiffs also allege as predicate acts that Defendants committed fraud to cover up their wrongful conduct through perjury, filing false police reports and providing false affidavits. Plaintiffs' allegations, however, fail to meet the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

As for these additional predicate acts, Plaintiffs generically allege that the "individual defendants engaged [in] and devised a fraudulent scheme to cover-up their wrongful conduct and therein engage in the following pattern of racketeering activity: . . . Making and filing false police

[9]Rule 9 provides in pertinent part that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

[10]Plaintiffs' mail and wire fraud allegations appear to be defective on an additional ground as they arguably fail to meet Rule 9(b)'s requirements. "To prove a violation of the mail fraud statute, plaintiffs must establish the existence of a fraudulent scheme and a mailing in furtherance of the scheme." McLaughlin v. Anderson, 962 F.2d 187, 190-91 (2d Cir. 1992) (citing Schmuck v. United States, 489 U.S. 705, 712, 109 S.Ct. 1443, 1448, 103 L.Ed.2d 734 (1989); Pereira v. United States, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954)). Although there is no requirement that the defendant personally mail a letter, the plaintiff must show "(1) that the defendant 'caused' the mailing . . . and (2) that the mailing was for the purpose of executing the scheme or . . . 'incidental to an essential part of the scheme.'" United States v. Bortnovsky, 879 F.2d 30, 36 (2d Cir. 1989) (quoting Pereira, 347 U.S. at 8-9, 74 S.Ct. at 362-63). "Plaintiffs asserting mail fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme." McLaughlin, 962 F.2d at 191 (citing Sun Sav. & Loan Assoc. v. Dierdorff, 825 F.2d 187, 196 (9th Cir. 1987) (mail fraud adequately pled where complaint described letters' date, content, origin, destination, and role in fraudulent scheme); Sears v. Likens, 912 F.2d 889, 893 (7th Cir. 1990) (dismissing complaint that failed to allege how misrepresentations furthered fraudulent scheme)). Using only the most generic and vague description does Plaintiffs' Complaint specify the allegedly mailed letters' or telephone calls' content, origin, destination, or role in fraudulent scheme. *See* Dkt. No. 1, Compl. at ¶ 197.

16

reports . . . Providing a false story about what happened . . . [and] testifying falsely and committing perjury before [the] Grand Jury . . . ." Dkt. No. 1, Compl. at ¶ 197(a)-(c). Plaintiffs, however, have neither specified which of Defendants' statements were fraudulent, nor identified with any specificity who made the allegedly fraudulent statements. Plaintiffs' Complaint fails to identify any specific person as the one who filed the allegedly false police report or who offered perjured testimony under oath. Plaintiffs' Complaint also fails to explain why any of Defendants' statements were substantively fraudulent. As to the alleged false police report, it is only by inference that Plaintiffs' Complaint alleges that any police reports were filed. Moreover, Plaintiffs' Complaint fails to specify the allegedly fraudulent contents of such reports. Plaintiffs' claim of a fraudulent police report fails to hurdle Rule 9(b)'s strict pleading guidelines. The final allegation in support of Plaintiffs' RICO claim is that Defendants testified falsely before a Grand Jury. Just as with the alleged false police reports, Plaintiffs failed to meet their burden under Rule 9(b) because their Complaint fails to identify the substance of the testimony which allegedly made it fraudulent.

In their Complaint's statement of facts, Plaintiffs maintain that Adessa "swore out a false affidavit that he was a peace officer. He was not." Dkt. No. 1, Compl. at ¶ 36. Plaintiffs' Complaint continues by alleging that this affidavit included stale inventory lists and "further defects." Dkt. No. 1, Compl. ¶¶ 37-38. Plaintiffs, however, failed to note the substance of these further defects, and failed to state who were responsible for these defects. This is the type of conclusory allegation Rule 9(b) seeks to avoid. Similarly, Plaintiffs failed to indicate how the inclusion of these stale lists made the affidavit fraudulent. Plaintiffs' Complaint does not reveal that Mr. Adessa intended to use these inventory lists for fraudulent purposes.

### 3.    Damages

In their Complaint, Plaintiffs' submit as a result of Defendants' alleged RICO violation, they

"suffered economic loss, including his [sic] inability to pursue his [sic] chosen career, as well as serious physical and emotional injuries . . . As a result of [Defendants' RICO Violations] the Plaintiffs . . . was [sic] made ill, suffered extreme physical, mental suffering and distress, [and] was subjected to overwhelming humiliation . . . ." Dkt. No. 1, Compl. at ¶¶ 197(e)(iii)-198.  As stated above, Section 1964(c) of the RICO statute creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of section 1962."  18 U.S.C. § 1964 (emphasis added).

A plain reading of the RICO statute reveals that Plaintiffs cannot seek damages for physical injury, mental suffering, distress, or humiliation.  *See* 28 U.S.C. § 1964(c).  Although the Second Circuit has not squarely addressed the issue, other Circuits have held that economic damages resulting from personal injuries are not actionable under RICO.  As the Seventh Circuit explained:

> Most personal injuries-loss of earnings, loss of consortium, loss of guidance, mental anguish, and pain and suffering, to name a few-will entail some pecuniary consequences. Perhaps the economic aspects of such injuries could, as a theoretical matter, be viewed as injuries to "business or property," but engaging in such metaphysical speculation is a task best left to philosophers, not the federal judiciary. Rather, we must determine if these injuries fall within the framework of § 1964(c) as understood by Congress . . . They do not.

Doe v. Roe, 958 F.2d 763, 770 (7th Cir. 1992); *see also* Bast v. Cohen, Dunn & Sinclair, P.C., 59 F.3d 492, 495 (4th Cir. 1995) (citing Doe and explaining that pecuniary losses flowing from extreme mental anguish do not constitute injury to property); Schiffels v. Kemper Fin. Servs., 978 F.2d 344, 353 (7th Cir. 1992) (explaining that personal injuries such as embarrassment, humiliation, and emotional distress, do not constitute an injury "to business or property" even if those injuries resulted in a pecuniary loss); Genty v. Resolution Trust Corp., 937 F.2d 899, 918-19 (3d Cir. 1991) (holding that physical and emotional injuries caused by exposure to toxic waste and resulting in medical expenses not compensable as injury to property under § 1964(c)); Grogan v. Platt, 835 F.2d 844, 848

(11th Cir. 1988) (holding recovery not available under RICO for pecuniary losses best understood as part of a personal injury claim, including loss of income, resulting from murder); Drake v. B.F. Goodrich Co., 782 F.2d 638, 644 (6th Cir. 1986) (finding RICO inapplicable to wrongful death action); Hollander v. Flash Dancers Topless Club, 340 F.Supp.2d 453 (S.D.N.Y. 2004) (explaining that damages to plaintiff's "'business reputation and good will' . . . and 'imperil[ing] his safety, life, liberty and right not to live in fear' . . . , simply are not the type of injuries to 'business or property' that are actionable under RICO.").

Regardless of whether Plaintiffs' damage claim for the "inability to pursue his chosen career" might qualify as an injury to "business or property," the remaining damages sought, serious physical and emotional injuries and humiliation, are not actionable under RICO.  Defendants are entitled to judgment on the pleadings as against Plaintiffs in their cause of action under RICO.

       *E.*    *Plaintiffs are not Entitled to Punitive Damages Against Municipal Entities*

"The general rule . . . is that no punitive damages are allowed unless expressly authorized by statute." Cook County, Illinois v. United States ex rel. Chandler, 538 U.S. 119, 129, 123 S.Ct. 1239, 155 L.Ed.2d 247 (2003) (quoting City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 259- 60, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981)); *see also* Ivani Contracting Corp. v. City of New York, 103 F.3d 257, 262 (2d Cir.), *cert. denied*, 520 U.S. 1211, 117 S.Ct. 1695, 137 L.Ed.2d 821 (1997) ("It is settled that punitive damages cannot be recovered from a municipal entity or municipal employees sued in their official capacity.").  Defendants are entitled to judgment on the pleadings on the claim for punitive damages as against the municipal defendants.  *See* Liss v. Nassau County, 425 F.Supp.2d 335, 343 (E.D.N.Y. 2006).

## CONCLUSION

**WHEREFORE,** after careful consideration of the file in this matter including the parties'

submissions, oral argument and the applicable law, the Court hereby

**GRANTS** Defendants' motion for judgment on the pleadings and dismisses Plaintiffs'

Complaint.

**IT IS SO ORDERED.**

Dated: September 15,  2006
Syracuse, New York

_____
      Howard G. Munson
      Senior  U.S. District Judge